UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: <br><br> Stream TV Networks, Inc., (Stream) <br><br> Debtor. | Chapter 11 <br><br> Bky. No. 23-10763 (MDC) |
| In re: <br><br> Technovative Media, Inc., (Technovative) <br><br> Debtor. | Chapter 11 <br><br> Bky. No. 23-10764 (MDC) <br><br> (Jointly Administered) |

**REMBRANDT 3D HOLDING LTD.'S OBJECTION TO PROOFS OF CLAIM NO. 1 FILED BY HAWK INVESTMENT HOLDINGS LTD., "AS COLLATERAL AGENT," NO. 2 FILED BY SLS HOLDINGS VI, LLC, AND NO. 3 FILED BY SEECUBIC, INC.**

Rembrandt 3D Holding Ltd. ("Rembrandt") objects to Proofs of Claim No. 1 filed by Hawk Investment Holdings Ltd. as "Collateral Agent," No. 2 filed by SLS Holdings VI, LLC, and No. 3 filed by SeeCubic, Inc. in the Technovative case, by and through its counsel, and file this objection seeking entry of the proposed order attached hereto (the "Proposed Order"), disallowing the claims. In further support of this Objection, Rembrandt respectfully state as follows:

**Jurisdiction and Venue**

1. The United States Bankruptcy Court for the Eastern District of Pennsylvania has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are sections 105(a) and 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 3007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 3007-1 of the United States

1

Bankruptcy Court of the Eastern District of Pennsylvania Local Bankruptcy Rules (the "Local Rules").

### Relief Requested

4. By this Objection, Rembrandt object to Proofs of Claim No. 1 filed by Hawk Investment Holdings Ltd. as "Collateral Agent," No. 2 filed by SLS Holdings VI, LLC, and No. 3 filed by SeeCubic, Inc., for the reasons described below, and seek entry of the Proposed Order, pursuant to section 502 of the Bankruptcy Code, Bankruptcy Rules 3007 and 9014, and Local Rule 3007-1, disallowing and expunging the claims as set forth below.

### Background

**A.    The Bankruptcy Filing & Prior Objection to Proofs of Claim**

5. On March 15, 2023 (the "Petition Date"), Debtors filed voluntary petitions for relief with the Court under chapter 11 of title 11 of the Bankruptcy Code. Debtors filed in the Eastern District of Pennsylvania because that is the location of their principal place of business. D.I. 48 at ¶ 2.

6. With respect to Technovative, Rembrandt is listed as the only creditor in the petition with a claim in excess of $10,000,000. (D.I. 1 at page 1 of Form 204.)

7. Since the Petition Date, Debtors have been operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8. As of the date of the filing of this Objection, no official committees have been appointed or designated. William A. Homony accepted his appointment as the chapter 11 trustee on January 15, 2024.

9. Rembrandt filed an Objection to Proofs of Claim No. 6 filed by Hawk Investment Holdings Ltd., "as collateral agent," No. 9 filed by SLS Holdings VI, LLC, and No. 14 filed by

2

SeeCubic, Inc on May 2, 2024. Rembrandt incorporates the arguments and facts in the Objection as if fully restated herein.

### SLS Debt and Pledge Agreement with Technovative

10. The Debtor's senior secured creditor is SLS Holdings VI, LLC ("SLS"). *Id.* Between 2011 and 2012, SLS loaned $6 million to the Stream through a series of notes (the "SLS Insider Notes"). *Id.* Technovative provided a guarantee of the Stream debt and pledged substantially all of its assets and the assets of its wholly owned subsidiaries as security for the SLS Insider Notes. *Id.* The Debtor executed a security agreement in connection with the SLS Insider Notes. *Id.*

### Formation of SeeCubic

11. SLS and Hawk formed SeeCubic, Inc. ("SeeCubic") as a Delaware corporation in 2020 to seize the Debtor's assets pursuant to the Omnibus Agreement described below. SeeCubic and Hawk were held in contempt by the Delaware Court of Chancery in October 2022 for their orchestrated efforts to seize control of the Debtor's subsidiary, TechnoVative USA. D.I. 48 at ¶ 35. In Paragraph 3 of his October 3, 2022 Opinion, Vice Chancellor Laster wrote: "This decision holds that SeeCubic and Hawk engaged in contumacious conduct. Shad L. Stastney was the puppet master who pulled the strings. He controls SeeCubic and Technovative, and he also controls SLS Holdings VI, LLC ("SLS"), Stream's only secured creditor other than Hawk." *Id.* (citing D.I. 48 at Exhibit K).

### Omnibus Agreement

12. On May 6, 2020, a debt resolution agreement (the "Omnibus Agreement") was executed purporting to commit the Debtor to a resolution whereby all its assets would be transferred to SLS and Hawk. D.I. 48 at ¶ 58 (citing D.I. 48 at Exhibit O).

13. The Debtor immediately challenged the validity of the Omnibus Agreement, as it violated a key clause of the company's charter, which required approval of the Class B shareholders for any transaction that transferred all or substantially all of the company's assets (D.I. 48 at ¶ 61 (citing D.I. 48 at Exhibit R at IV(D)(2)(d)).

14. Using the Omnibus Agreement as a foundation, SLS and Hawk began seizing the Debtor's assets through their new business entity, SeeCubic, even though no court had yet ruled on the validity of the Omnibus Agreement. On the title page of its June 2, 2020 private placement memorandum, SeeCubic declared itself "Owner of the brand Ultra-D." D.I. 48 at ¶ 64.

15. This seizure of assets included the technology provided by Philips and Rembrandt even though both licenses prohibited assignment of the licenses and prohibited any sublicensing. By transferring technology to SeeCubic, Inc, Technovative and its subsidiaries infringed and misappropriated the intellectual property of both Philips and Rembrandt. The Philips license is held by a Technovative subsidiary, UltraD Ventures, but has a change of control provision that terminates the license upon change of control. The Rembrandt license is directly with Stream and assignment is not authorized. As such, SeeCubic caused breaches of both agreements and Technovative and its subsidiaries to be liable for various claims of copyright and patent infringement as well as trade secret misappropriation.

16. On June 15, 2022, in a unanimous 5-0 en banc opinion, the Delaware Supreme Court held that the Omnibus Agreement could not have become effective without the approval of Stream's Class B stockholders. *Stream TV Networks, Inc. v. SeeCubic, Inc.*, 279 A.3d 323 (Del. 2022) (the "Supreme Court Decision").

4

17. On July 1, 2022, the Delaware Supreme Court issued a mandate (the "Mandate") that the PI Order was "hereby VACATED, REVERSED and REMANDED. D.I. 48 at ¶ 83 (citing D.I. 48 at Exhibit Z).

### Failure to Return Assets

18. Despite the Delaware Supreme Court reversal, SeeCubic failed to return the Debtor's assets. D.I. 48 at ¶ 85. On July 5, 2022, SeeCubic filed Supplemental Counterclaims in an attempt to block the assets from being returned to the Debtor. *Id*.

19. On July 31, 2022, SeeCubic informed the Debtor that it intended to take legal title to the Debtor's assets pursuant to Article 9 of the UCC, enforcing creditor rights held by SLS. D.I. 48 at ¶ 86. Furthermore, SeeCubic intended to sell the Debtor's assets. *Id.*

20. On August 1, 2022, the Debtor requested a Temporary Restraining Order against SeeCubic to prevent the sale of its assets. D.I. 48 at ¶ 87.

21. On August 9, 2022, nearly eight weeks after the Delaware Supreme Court opinion, the Chancery Court issued a TRO against SeeCubic. D.I. 48 at ¶ 88. Vice Chancellor Laster specifically stated his expectations: "SeeCubic will restore Stream's assets to Stream in accordance with the Rule 54(b) order. Once this has occurred, SeeCubic may seek to exercise any creditor's rights it possesses against Stream. SeeCubic must do so based on a status quo where Stream has title to and possession of its assets, not a status quo in which SeeCubic acquired possession based on a decision that the Delaware Supreme Court has held is erroneous." *Id.* (citing D.I. 48 at Exhibit AA).

22. On August 10, 2022, the Delaware Chancery Court entered a partial final judgment which determined that the Omnibus Agreement was "without legal effect." D.I. 48 at ¶ 89; Omnibus Agreement Litigation, D.I. 477 ¶ 2 (the "Second Partial Final Judgment").

23. The Second Partial Final Judgment specifically determined that "the Omnibus Agreement did not validly transfer legal title to any [of the Legacy Stream Assets] from Stream to SeeCubic." *Omnibus Agreement Litigation*, D.I. 477 ¶ 3. The Second Partial Final Judgment thus rescinded the transactions between SeeCubic and Stream. The court directed the parties to cooperate to effectuate the Second Partial Final Judgment, including "by causing SeeCubic to transfer legal title to the [Legacy Stream Assets] from SeeCubic to Stream as expeditiously as possible." *Id.* ¶ 4.

24. No one appealed the Second Partial Final Judgment.

25. The Court then issued an order declaring Stream to be the sole owner of the Company's equity. *See Omnibus Agreement Litigation*, D.I. 569 ¶¶ 1–2.

26. On October 20, 2022, the Chancery Court issued a Status Quo Order in which SeeCubic was allowed to retain possession of the Debtor's assets pending adjudication of the Section 225 action by Hawk. D.I. 48 at ¶ 92. Further, the Court appointed Ian Liston of the firm Wilson, Sonsini, Goodrich & Rosati P.C. as receiver pendante lite (the "Receiver") to oversee the operations of TechnoVative USA. *Id.* (citing D.I. 48 at Exhibit DD).

27. In response to Hawk's Complaint, Stream filed a motion to dismiss pursuant to Del. Ch. Ct. R. 12(b)(6) and 17. *Hawk Investment Holdings Ltd. v. Stream TV Networks, Inc., et. al.*, Case No. 2022-0930-JTL. D.I. 109. In addition, Hawk filed a motion for partial summary judgment. *Hawk Investment Holdings Ltd. v. Stream TV Networks, Inc., et. al.*, Case No. 2022-0930-JTL. D.I. 104. In its "Collateral Estoppel Opinion," the Chancery Court denied Stream's motion to dismiss and granted Hawk's motion for partial summary judgment. (*Hawk Investment Holdings Ltd. v. Stream TV Networks, Inc., et. al.*, Case No. 2022-0930-JTL. D.I. 160.)

**The Claims Process**

28. On March 27, 2023, the Court issued a Notice, which established May 24, 2023 as the last date for all creditors other than governmental units holding a "claim" (as such term is defined in section 101(5) of the Bankruptcy Code) against Technovative Media, Inc.

29. In the ordinary course of business, the Debtors maintain books and records (the "Books and Records") that reflect, among other things, the Debtors' liabilities and the amounts thereof owed to their creditors.

30. The Debtors' register of claims (the "Claims Register"), was prepared and maintained by the Debtors' claims agent BMS Group.

31. On May 19, 2023, Hawk Investment Holdings Ltd., ("Hawk") as "Collateral Agent," filed Proof of Claim No. 1.

32. On May 23, 2023, SLS Holdings VI, LLC ("SLS") filed Proof of Claim No. 2.

33. On May 23, 2023, SeeCubic, Inc. ("SeeCubic") filed Proof of Claim No. 3.

**Objections**

34. As a preliminary matter, the Debtors have filed an adversary proceeding, case number 23-00057, on August 18, 2023, which objects to the POCs ("Adversary"). The Objection, detailed in the Adversary, objects to the POCs because of the takeover scheme, which persists to this day, created by Alastair Crawford (and over 50 other shareholders), SLS, and Hawk. The hallmark of this scheme is to take the valuable assets of the Debtors, obstruct their ability to make payment on their debts, obstruct the ability to raise the money needed to go to production and convert the secured debt to equity, and to avoid paying $20 million in unsecured claims and instead pay Mr. Crawford and other shareholders who participated in the scheme in violation of the absolute priority scheme.

35. Rembrandt incorporates the arguments and facts in the Adversary by reference as if fully restated herein.

### Rent Regarding the Bonding Equipment

36. SeeCubic claims that it paid $917,171.00 in February 2022 for rent relating to storage of the Bonding Equipment.

37. SeeCubic argues that "the Bonding Equipment is not property of the Debtors' estates. However, out of an abundance of caution, in the event that the Court determines the Bonding Equipment is property of the Debtors' estates, SeeCubic asserts a claim for the $917,171.00 it paid to avoid a sale of the Bonding Equipment."

38. The Bonding Equipment is an asset of the Debtors. There has been no evidence of any ownership by SeeCubic of the Bonding Equipment. SeeCubic took possession of the Bonding Equipment pursuant to the Omnibus Agreement, did not return it in defiance of the Delaware Supreme Court mandate, and then has stored it in a warehouse space without climate controls thereby causing significant damage to this precision equipment.

39. Stream and Visual Semiconductor, Inc. have testified in Court and discussed with Judge Mayer in mediation with Hawk and SeeCubic that an arrangement has been reached with Cystar, one of the customers who have a pending purchase order to house the bonding equipment rent free and have made arrangements for the engineers who manufactured the bonding equipment to repair and calibrate the bonding equipment and to allow initial production within Cystar's facility. However, SeeCubic has refused to allow such a transfer and has concealed the whereabouts and made several attempts to seize the equipment in violation of the automatic stay in Stream's first chapter 11. Until the Bonding Equipment is returned, and without damage, SeeCubic can recover nothing under 11 U.S.C. 502(d) and is also subject to setoff for the value of

8

the damages as well as the lost productivity and related lost profits from refusing to return the Bonding Equipment. If the equipment is lost or destroyed, SeeCubic's entire claim will be setoff as the value of the equipment as modified exceeds the full value of their claims against the estate.

40. Assuming that SeeCubic does not return the Bonding Equipment, they have self-helped themselves to equipment worth more than the amounts guaranteed by Technovative such that the guarantee agreement and pledge agreement is fully satisfied and Rembrandt is the only creditor of the Technovative estate.

## Claims Regarding Intellectual Property

41. In its Proof of Claim, SeeCubic claims "[a]s part of its operation of the underlying business, SeeCubic devoted significant additional resources by funding the operations of the non-Debtor subsidiaries, investing in the business's technology, maintaining the requisite patents, and renewing software licenses, among other things."

42. As of December 2022, the Debtor's subsidiary has been granted 128 patents. These patents are held by Debtor's subsidiary Ultra-D Coöperatief U.A., a Uitsluiting van Aansprakelijkheid under the laws of the Netherlands.

43. SeeCubic is unable to point to any agreement providing an interest in these patents in exchange for payment of maintenance fees because no such agreement exists.

44. "It is well recognized that 'a corporate parent which owns the shares of a subsidiary does not, for that reason alone, own or have legal title to the assets of the subsidiary.'" *Williams v. McGreevey (Touch Am. Holdings, Inc.)*, 401 B.R. 107, 126 (Bankr. D. Del. 2009) (finding that parent's status as a holding company who owned all the shares of its subsidiaries did not create a right to the subsidiaries' assets) (quoting *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475, 123 S. Ct. 1655, 1660, 155 L.Ed.2d 643 (2003)).

45. Furthermore, there is a "the well-established rule that 'parent and subsidiary corporations are separate entities, having separate assets and liabilities. . . . [H]ence, the parent's creditors have no claim to the subsidiary's assets, and vice versa.'" *Official Comm. of Unsecured Creditors of HH Liquidation, LLC v. Comvest Grp. Holdings, LLC*, 590 B.R. 211, 256-57 (Bankr. D. Del. 2018) (quoting *In re Regency Holdings (Cayman), Inc.*, 216 B.R. 371, 375 (Bankr. S.D.N.Y. 1998)). "It is only the exceptional case where a court will disregard the corporate form." *Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1305 (D. Del. 1990); *see also Vichi v. Koninklijke Philips Elecs. N.V.*, 62 A.3d 26, 49 (Del. Ch. 2012).

46. Therefore, because these patents are not the property of Debtors' estates and creditors have made no attempt at demonstrating an exceptional case, SLS, Hawk, and SeeCubic have no claim to the assets of Ultra-D Coöperatief U.A. and should not be allowed to seek a claim against this alleged collateral.

47. This seizure of assets included the technology provided by Philips and Rembrandt even though both licenses prohibited assignment of the licenses and prohibited any sublicensing. By transferring technology to SeeCubic, Inc, Technovative and its subsidiaries infringed and misappropriated the intellectual property of both Philips and Rembrandt.

48. The Philips license is held by a Technovative subsidiary, UltraD Ventures, but has a change of control provision that terminates the license upon change of control.

49. The Rembrandt license is directly with Stream and assignment is not assignable such that as soon as any UltraD software, source code, or hardware using Rembrandt technology leaves any entity controlled by Stream, it is not licensed and violates Rembrandt's license with Stream.

50. SLS, SeeCubic,, and Hawk caused breaches of both agreements and Technovative and its subsidiaries to be liable for various claims of copyright and patent infringement as well as trade secret misappropriation.

### Basis for Relief

51. When asserting a proof of claim against a bankrupt estate, a claimant must allege facts that, if true, would support a finding that the debtor is legally liable to the claimant. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992); *In re Int'l Match Corp.*, 69 F. 2d 73, 76 (2d Cir. 1934) (finding that a proof of claim should at least allege facts from which legal liability can be seen to exist). Where the claimant alleges sufficient facts to support its claim, its claim is accorded *prima facie* validity. *In re Allegheny Int'l, Inc.*, 954 F.2d at 173.

52. A party wishing to dispute such a claim must produce evidence in sufficient force to negate the claim's *prima facie* validity. *Id*. In practice, the objecting party must produce evidence that would refute at least one of the allegations essential to the claim's legal sufficiency. *Id*. Once the objecting party produces such evidence, the burden shifts back to the claimant to prove the validity of his or her claim by a preponderance of the evidence. *Id*. The burden of persuasion is always on the claimant. *Id.*

53. For the reasons discussed in the preceding section, the claims of SLS, Hawk, and SeeCubic do not meet the standards for *prima facie* validity and should be disallowed as requested.

54. It is undisputed that SLS, Hawk, and SeeCubic did not rely on their existing agreements to collect on any debt obligation owed to them, but rather sought to gain unfair advantage and severely harm the Debtors by putting forth the invalid "Omnibus Agreement." This act was already determined to be unlawful by the Delaware Supreme Court.

11

55. The scheme to create the Omnibus Agreement was inequitable conduct that conferred an unfair advantage to the secured creditors far beyond what they would have been entitled to if they had merely relied on their existing debt agreements.

56. The entire purpose of this scheme was to transfer the value of Stream and Technovative to SeeCubic in favor of SLS, Hawk, and the directors and shareholder of Stream that colluded with SeeCubic in this scheme. This plan was at the direct expense of the unsecured creditors of Stream and Technovative, and specifically, harmed Rembrandt.

57. It is undisputed that SLS, Hawk, and SeeCubic do not have a license from Philips or Rembrandt.

58. By taking possession of technology and entities that had access to Philips and Rembrandt technology, SLS, Hawk, and SeeCubic caused a breach of the agreements with Philips and Rembrandt and caused infringement by Technovative of the intellectual property of both Philips and Rembrandt.

59. It is undisputed that Shadron Stastney was the CFO of Stream and an insider with access to internal and proprietary information of Stream, including but not limited to, the status of the resolution of Rembrandt's claims with Stream.

60. SLS, Hawk, and SeeCubic engaged in inequitable conduct that resulted in injury to creditors and conferred an unfair advantage on the claimant such that equitable subordination of the claim or its disallowance, whether based on its conduct or simple setoff, is consistent with the provisions of the Bankruptcy Code and the most appropriate remedy for the inequitable conduct. SLS, Hawk, and SeeCubic did not merely aggressively enforce any contract rights they may have had, but instead engaged in an illegal takeover scheme and have asserted years of penalties and interest while they have robbed the Debtors' and their estates of their ability to operate. They have

disrupted progress towards commercialization at a crucial point where electronics had been perfected, ruined business relationships, scattered employees, and have persisted in their scheme to rob the assets, this time through a war of attrition that is simply an extension and reimagining of their takeover scheme.  They ignored Rembrandt's offer to fund the cost of the production line restart to fulfill Stream's obligation to Rembrandt.  To this day, they are blocking Stream from fulfilling the Cystar and Southern Telecom purchase orders.  Instead of allowing purchase orders to move forward and $150 million to come into the estate, which if their claims are allowed would result in their payment, they persist in sabotage, vexatious litigation, and infringement of trade secrets and other intellectual property.

## **Reservation of Rights**

61. Rembrandt hereby reserve the right to object in the future to any of the Proofs of Claim listed in this Objection or on the exhibits attached hereto on any ground, and to amend, modify or supplement this Objection, including, without limitation, to object to amended or newly-filed Claims.  Separate notice and hearing will be scheduled for any such objection.

62. Notwithstanding anything contained in this Objection or the attached exhibits, nothing herein shall be construed as a waiver of any rights that Rembrandt may have: (a) to bring avoidance actions under the applicable sections of the Bankruptcy Code against the holders of Claims subject to the Objection; or (b) to exercise their rights of setoff against the holders of such Claims relating to such avoidance actions.

## **Notice**

63. Rembrandt has provided notice of this Objection via first class mail to: (a) the Office of the United States Trustee for the Eastern District of Pennsylvania; (b) counsel for the agents for the Debtors' prepetition secured and unsecured lenders; (c) any persons who have filed

13

a request for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002; and (e) parties whose Claims have been objected to in this Objection. In light of the nature of the relief requested, Rembrandt respectfully submit that no further notice is necessary.

### Compliance With Local Rule 3007-1

64. To the best of Rembrandt's knowledge and belief, this Objection and all exhibits to the Proposed Order comply with Local Rule 3007-1 and the Rule 3007(c) General Order. To the extent that this Objection does not comply in all respects with the requirements of Local Rule 3007-1, the undersigned believes such deviations are not material and respectfully requests that any such requirement be waived.

Dated: May 20, 2024

/s/ Andrew DeMarco
Andrew DeMarco, Esq. (PA Bar No. 326294)
ademarco@devlinlawfirm.com
DEVLIN LAW FIRM LLC
1526 Gilpin Avenue
Wilmington, DE 19806
Telephone: (302) 449-9010
Facsimile: (302) 353-4251

*Attorneys for Rembrandt 3D Holding Ltd.*